# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>ROBERT BRACE,<br>ROBERT BRACE FARMS, INC., AND<br>ROBERT BRACE AND SONS, INC.,<br><br>                    Defendants. | Civil Action 1:17-cv-00006 (BR)<br><br>ORDER ON REMEDY |

## I.    INTRODUCTION

Before the Court is the remedy stage of this matter. After bifurcating proceedings, the Court granted the United States' Motion for Summary Judgment on Liability holding Defendants Robert Brace, Robert Brace Farms, Inc. and Robert Brace and Sons, Inc.'s (collectively, "Defendants") liable for violating Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), after Defendants attempted to convert 14 acres of wetlands to arable land on a plot known as the Marsh Site located in the townships of McKean and Waterford, Erie County, Pennsylvania. Dkt. No. 158.

The United States now seeks an order directing Defendants to rehabilitate the wetlands on the Marsh Site. *See* Dkt. No. 174 at 3–10; Dkt. No. 177 at 1–2. The United States also seeks a deed restriction to permanently protect the wetlands on the Site and a civil penalty of $400,000.00. *See* Dkt. No. 174 at 10–24; Dkt. No. 177 at 3–15. Defendants respond that the terms of the United States' requests are poorly-defined and draconian. Dkt. No. 176. Having reviewed the briefing, the record of the case, and the relevant legal authorities, the Court will

1

order Defendants to develop a restoration plan to rehabilitate the wetlands on the Marsh Site in accordance with the terms provided herein and record a protective deed restriction on the property. The Court will delay instituting a civil penalty, however, until after the costs of rehabilitation can be determined and allocated. The Court will retain jurisdiction to oversee development of the restoration plan and its execution. The reasoning for the Court's decision follows.

## II. BACKGROUND

This matter spans over 30 years of litigation between the United States and Defendants over alleged CWA violations. The details were explicated in the Courts' Order Granting Plaintiff's Motions to Strike and for Summary Judgment on Liability and Related Motions. *See generally* Dkt. No. 158. In short, Defendants are farmers owning several tracts of land in western Pennsylvania including the Marsh Site, which Defendants purchased in 2012. The Marsh Site, and its wetlands, sit adjacent to Elk Creek, which is a tributary flowing into Lake Erie.

In its Order, the Court found Defendants liable for violating the CWA by attempting to clear the Marsh Site of its wetlands to convert them to arable land. These actions are similar to a matter pending in the Western District of Pennsylvania involving an adjacent plot known as the Murphy Site, in which the Defendants have been adjudicated as having engaged in the same type of violations. That action dates back to the 1990s at which time the Third Circuit held that Defendants violated the CWA by clearing wetlands on the Murphy Site. *See United States v. Brace*, 41 F.3d 117 (3d Cir. 1994). After the Third Circuit's decision, the parties entered into a Consent Decree.

At the same time the United States initiated this action regarding the Marsh Site, it also moved to enforce the Murphy Site Consent Decree. That action is before the Honorable Susan

Paradise Baxter. *See United States v. Brace, et al.*, No. 90-229 (W.D. Pa. filed Oct. 4, 1990). The Court must now determine the remedy for Defendants violations of the CWA in this matter.

### III. REHABILITATION

The United States seeks permanent injunctive relief ordering defendants to restore the wetlands Defendants worked to clear on the Marsh Site. The United States' proposed relief requires Defendants to retain a qualified consultant to conduct a wetlands delineation on the Site and develop a restoration plan consistent with the conceptual plan outlined by the United States' expert Dr. Robert Brooks. Dkt. No. 174 at 3–10; *see* Dkt. No. 174-1, Ex. A, Attach. A at 121–31 (Conceptual Plan for Wetlands & Stream Restoration prepared by Robert P. Brooks, Ph.D.). This proposed plan would then be submitted to the United States, and the Environmental Protection Agency ("EPA"), for approval. Defendants do not object to the government's request for injunctive relief in the form of restoration and rehabilitation, but instead argue that the United States' plan is too abstract for the Court to assess presently and that the United States' plan, in effect, outsources plan approval to the EPA, rather than the Court. Dkt. No. 176 at 3–6.

The Court agrees with the United State that restoration is appropriate given the CWA's goal of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); *see also United States v. Cumberland Farms*, 826 F.2d 1151, 1164 (1st Cir. 1987) (citation omitted) (District Courts have the "authority to issue such restorative orders so as to effectuate the stated goals of the Clean Water Act"). Further, rehabilitation of disturbed wetlands is the CWA's "preferred remedy." *United States v. Bedford*, No. 07-cv-491, 2009 WL 1491224, at *14 (E.D. Va. May 22, 2009) (citing *Cumberland Farms*, 826 F.2d at 1161–65).

"In evaluating remediation or restoration proposals, courts have considered three factors: (1) whether the proposal 'would confer maximum environmental benefits,' (2) whether it is

3

'achievable as a practical matter,' and (3) whether it bears 'an equitable relationship to the degree and kind of wrong it is intended to remedy.'" *United States v. Deaton*, 332 F.3d 698, 714 (4th Cir. 2003) (quoting *Cumberland*, 826 F.2d at 1164); *see also United States v. Donovan*, 466 F. Supp. 2d 595, 598 (D. Del. 2006).

The Court has reviewed Dr. Brook's conceptual plan and finds it sufficiently detailed to provide a basis for Defendants to retain a qualified delineation expert and construct a restoration plan for EPA approval. The essence of his plan consists of (1) removing or disabling the installed tile drains; (2) filling in to grade ditches dug by Defendants; (3) reintroducing previously cleared vegetation; and (4) reestablishing the severed connection between Elk Creek and its floodplain. *See* Dkt. No. 174-1, Ex. A at ¶¶ 15–21 (Declaration of Robert P. Brooks, PH.D).

First, this plan effectively confers maximum environmental benefits by reversing the actions which caused the disturbance of the wetlands in the first place. *See, e.g.* Dkt. No. 174-1, Ex. A, Attach. A at 125 ("the primary objective for wetlands restoration will be to reverse the impacts of the ditch and tile drainage system by filling in ditches and blocking or removing drainage pipes, and re-establish Elk Creek's connections with the floodplain"). Further, Dr. Brooks has included suggests for mitigating harms caused by the efforts to restore the wetlands, including seeding areas disturbed by restoration efforts such as temporary roads and work areas along Elk Creek, *See id.* at 126, and using silty clay or silty loam to fill in ditches because they better match the soil composition of the Marsh Site and will provide for beneficial hydrological effects, *id.* at 125. These are just examples. Defendants should follow Dr. Brooks' conceptual plan as it provides for the restoration of the pre-disturbance wetlands, which effectuates the CWA's goals and recovers the wetlands' environmental benefits. *See United States v. Smith*,

4

1998 WL 325954, at *3 (4th Cir. 1998) (finding that pre-disturbance wetlands "served various functions, including habitat sites for wildlife, water filtration, food chain production, and flood water control" and that removal of the disturbance "would reestablish the pre-existing hydrology and set the stage for restoring the area to a productive . . . wetland").

Next, the plan is achievable as a practical matter. Much of the work consists of reversing what Defendants themselves have done. Dr. Brooks drills down to the minute level of suggesting various wetlands species to replant and the density at which to replant. *See Id.* at 126. Nothing about the plan suggests infeasibility and Defendants have not raised specific objections in their Opposition to the United States' Remedy Brief Regarding Restoration and Penalty. *See generally* Dkt. No. 176. Thus, Dr. Brooks' conceptual plan is adequate at a practical level to suffice at this time. *See, e.g., United States v. Ciampitti*, 615 F. Supp. 116, 123–24 (D.N.J. 1984) ("the indefiniteness of the Government's proposal is actually a virtue. The defendants, so long as they are faithful to the goals of the plan, will have considerable independence and will be able to do what they feel is desirable to minimize the cost of restoration.").

Finally, the conceptual plan bears an equitable relationship to the harm caused. Its main thrust is to reverse the damage done by Plaintiff's themselves. Nothing could be more equitable given the Defendants' repeated history of violating the CWA, even in the face of the Third Circuit's opinion condemning the very same actions taken here.

Thus, the Court will order as follows: Defendants shall retain a qualified expert to conduct a wetlands delineation on the Marsh Site. Based on that delineation, and using Dr. Brook's conceptual plan, Defendants shall submit a restoration plan to the EPA for comment or approval. At minimum, Defendants' plan shall provide for (1) removing or disabling the installed tile drains; (2) filling in to grade ditches dug by Defendants; (3) reintroducing

5

previously cleared vegetation; and (4) reestablishing the severed connection between Elk Creek and its floodplain. Overall, the plan should provide for the complete restoration of the wetlands destroyed by Defendants to their pre-disturbance state. The EPA shall review Defendants' submitted plan and timely provide any comment or approval.

The Court will retain jurisdiction over this matter to oversee both development of the restoration plan and its full implementation. Thus, if Defendants object to the EPA's comments, Defendants shall submit notice to this Court within 30 days of receiving the EPA's comments. The United States shall then have 14 days to respond.

The Court expects the parties to work collaboratively to achieve development, review, and implementation of a restoration plan in a timely manner. The Court notes Defendants' past history of obstructionism, which the Court has made clear it will not tolerate. The parties shall submit a joint status report outlining their progress developing the restoration plan and implementing restoration within 30 days of this order. The report shall include an agreed date by which the restoration plan will be completed.

## IV. DEED RESTRICTION

The United States proposes that the Court order Defendants to record a deed restriction on the Marsh Site to protect the wetlands as they recover. Dkt. No. 174 at 10; Dkt. No. 177 at 3–4. Defendants respond that this proposal is overly abstract and thus delegates approval of a deed restriction to the United States. Dkt. No. 176 at 6–7. Additionally, Defendants charge that a permanent deed restriction is excessive and would make it difficult for Defendants to sell the property, if they so wish.

Along with its Reply in Support of Restoration and Penalty, The United States has provided model deed language typically used by the U.S. Corps of Army Engineers. *See* Dkt. No. 177-1, Ex. A (Model Deed Restriction). The Court finds that a deed restriction is

appropriate given Defendant's history of disturbing wetlands and the need to protect the wetlands on the Marsh Site as they rehabilitate. Thus, the Court will order Defendants to provide to the United States a proposed deed restriction based on the model deed provided by the United States within 30 days of this order. The United States shall review this proposed deed restriction and provide any comment or approval within 10 days. If the parties cannot arrive at acceptable language, they shall jointly present the matter to the Court.

## V. CIVIL PENALTY

The United States seeks a $400,000.00 civil penalty as appropriate given the nature and extent of Defendants' violations. Dkt. No. 174 at 10–24. Defendants call such a punishment "excessive" and claim a smaller, undefined amount is appropriate. Dkt. No. 176 at 7–17. Further, Defendants request that the Court suspend payment of the penalty and reduce it by the costs of rehabilitation. *Id.* at 17.

Civil penalties are mandatory under the CWA for violations such as those at issue in this matter. 33 U.S.C. § 1319(d) ("[a]ny person who violates section 1311 . . . of this title . . . shall be subject to a civil penalty not to exceed $25,000 per day for each violation").[1] Such penalties are "aimed at deterrence with respect to both the violator's future conduct (specific deterrence) and the general population regulated by the Act (general deterrence)." *United States v. Mun. Auth. of Union Twp.*, 929 F. Supp. 800, 806 (M.D. Pa. 1996), *aff'd*, 150 F.3d 259 (3d Cir. 1998). The CWA provides a number of factors for courts to consider when setting a civil penalty, including (1) "the seriousness of the violation or violations"; (2) "the economic benefit (if any) resulting from the violation"; (3) "any history of such violations"; (4) "any good-faith efforts to

---

[1] The per day per violation penalty amount provided by 33 U.S.C. § 1319(d) has been adjusted for inflation to $37,500 per day for each violation occurring after January 12, 2009, and $55,800 per day for each violation occurring after November 2, 2015. *See* 40 C.F.R. § 19.4.

7

comply with the applicable requirements"; (5) "the economic impact of the penalty on the violator"; and (6) "such other matters as justice may require." 33 U.S.C. § 1319.

The Court notes both parties' arguments as to why the listed factors militate towards an increased or decreased penalty. At present, however, the Court will defer ordering a civil penalty until after the costs of rehabilitation are determined and adequate financial resources are allocated towards achieving that goal. Deferring implementation of penalties at this time will provide the Court an opportunity to assess Defendants' good faith in correcting the damage they have done to the land.

## VI. CONCLUSION

For the foregoing reasons, the Court orders as follows:

- Defendants shall retain a qualified expert to conduct a wetlands delineation on the Marsh Site. Based on Dr. Brook's conceptual plan, Defendants shall submit a proposed restoration plan to the EPA for comment or approval. At minimum, Defendants' plan shall provide for (1) removing or disabling the installed tile drains; (2) filling in to grade ditches dug by Defendants; (3) reintroducing previously cleared vegetation; and (4) reestablishing the severed connection between Elk Creek and its floodplain;

- The United States and the EPA shall review Defendants' submission and timely provide any comment or approval. If Defendants object to the EPA's comments, Defendants shall seek review by this Court within 30 days of receiving the comments. The United States shall then have 14 days to respond;

- Defendants shall submit a proposed deed restriction based on the model deed provided by the United States within 30 days of this order;

- The United States shall review Defendants' proposed deed restriction and provide any comment or approval within 10 days. If the parties cannot arrive at acceptable language, they shall jointly present the matter to the Court; and
- The parties shall submit a joint status report outlining their progress developing and implementing both a restoration plan and deed restriction within 30 days of this order.

IT IS SO ORDERED.

Dated this 27th day of February, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE